In the Matter of HAZEL MARCUS, Appellant. R. H. MACY & Co., INC., Respondent.

Submitted May 15, 1947; decided July 2, 1947.

*William Rosenfeld* for appellant. I. The statutes clearly grant the right to an appraisal under the circumstances. (Stock Corporation Law, § 36, par. [E], § 38, subd. 9, par. [d].) II. The dilution of the voting rights of one class of stock by the granting of voting rights to another class of stock constitutes a " limiting " of the voting rights of the former class. (*Matter of Kinney,* 279 N. Y. 423.) III. The courts below overlooked or ignored the fact that the preferred stock to which voting rights were given had been previously authorized.

*Leon Lauterstein, Melbourne Bergerman* and *George Siegel* for respondent. I. As a matter of law appellant is not entitled to an appraisal of the value of her common stock. Respondent, by granting voting rights to the preferred stockholders without giving them any new or additional rights to vote separately as a class, did not abolish or limit the voting rights of any common stockholder. (*Lord* v. *Equitable Life Assurance Society,* 194 N. Y. 212.) II. Appraisal has been refused where new or additional rights were given to stockholders of a certain class leaving the rights of stockholders of another class untouched. The enactment of paragraph (d) of subdivision 9 of section 38 of the Stock Corporation Law evinces no intention to grant an appraisal in such situation. (*Matter of Kinney,* 279 N. Y. 423; *Matter of Silberkraus,* 250 N. Y. 242; *Matter of Dresser,* 247 N. Y. 553; *Wagstaff* v. *Holly Sugar Corp.,* 253

App. Div. 616, 279 N. Y. 625; *Pouch v. Prudential Ins. Co.*, 204 N. Y. 281; *Matter of Cole*, 235 N. Y. 48.) III. Because paragraph (d) of subdivision 9 of section 38 of the Stock Corporation Law denies the right of appraisal even though voting rights of existing stock "may be limited by the voting rights given to new shares of any class authorized by the certificate", it does not follow that an appraisal is warranted where the giving of voting rights to the existing preferred stock does not, as matter of law, limit the rights of the common stock. (*Grausman v. Porto Rican-American Tobacco Co.*, 95 N. J. Eq. 155.) IV. The statute does not give any right of appraisal where, as here, the majority stockholders apart from the statute had a legal right to undertake the action and a dissenting minority stockholder had no right to block such action. (*Matter of Timmis*, 200 N. Y. 177; *Matter of Leventall*, 241 App. Div. 277; *Lord v. Equitable Life Assurance Society*, 194 N. Y. 212.) V. Courts of equity have inherent general equitable discretion in dealing with the relations between a corporation and its stockholders. Therefore, on application for the appointment of appraisers the court has power to deny the application in the exercise of sound discretion if it is not made in good faith but is sought for an ulterior purpose. (*Matter of Durr v. Paragon Trading Corp.*, 270 N. Y. 464; *Matter of Baker Macfadden Publications*, 270 App. Div. 440.)

LEWIS, J. The appellant, since May 19, 1943, has been the registered owner of fifty shares of the common stock of the respondent, R. H. Macy & Co., Inc. On September 28, 1945, the respondent gave formal notice to its stockholders, including the appellant, that among other matters to be acted upon at its annual meeting to be held on October 30, 1945, would be a proposal, recommended by its board of directors, that its certificate of incorporation be so amended as to add to the rights of preferred stockholders voting rights, equal share for share, to those to which the holders of the corporation's common stock are entitled. On October 27, 1945, prior to the annual meeting to which such notice referred, the appellant sent to the respondent by registered mail a written notice that, as a common stockholder, she objected to the proposed amendment of the certificate of incorporation, and to the adoption of any resolution designed

to effect an amendment by which there would be added to the rights of owners of the corporation's preferred stock voting rights equal, share for share, to the voting rights of common stockholders. By her written notice of objection the appellant also demanded payment for the common stock then owned by her. Subsequently, at the annual meeting of the corporation — when the proposal to amend the certificate of incorporation was approved by the stockholders — the common stock owned by the appellant was voted against such amendment.

Thereafter, as a nonconsenting common stockholder, the appellant instituted the present proceeding to determine the value of her stock as a basis for the enforcement of payment therefor. (Stock Corporation Law, §§ 21, 38, subd. 9, par. [d].) At Special Term her application for the appointment of appraisers to evaluate her stock was denied and the petition herein was dismissed. Upon her appeal to the Appellate Division the order of Special Term was unanimously affirmed.

By this appeal — which was taken by our leave — we are to determine whether upon the facts of record before us the appellant may invoke paragraph (d) subdivision 9 of section 38 of the Stock Corporation Law as a means legally appropriate to accomplish the appraisal of her stock and to enforce payment therefor.

The respondent does not deny the appellant's allegation that prior to its corporate action taken on October 30, 1945, to which she objected, the corporation had an authorized capitalization of 500,000 shares of cumulative preferred stock ($100 par value) and 2,500,000 shares of common stock (without par value); nor is it denied that there were then issued and outstanding 165,600 shares of authorized preferred stock and 1,656,000 shares of common stock. It also appeared that prior to the annual stockholders' meeting of October 30, 1945, the respondent's certificate of incorporation gave to the holders of the preferred stock no voting rights except in the event of specified contingencies.

Concededly the amendment to the respondent's certificate of incorporation, adopted by the stockholders at the annual meeting of October 30, 1945, granted to the holders of the corporation's preferred stock additional rights which increased their voting privileges from a right to vote only in specified contingencies to voting rights equal to those of the holders of the corporation's

common stock. By thus granting to the 165,600 preferred shares then outstanding voting rights equal share for share to those to which the holders of common stock are entitled, the aggregate number of shares having voting rights equal to those of the common shares was substantially increased and thereby the voting power of each common share outstanding prior to October 30, 1945, was altered or limited by the resulting prorata diminution of its potential worth as a factor in the management of the corporation's affairs.

We conclude that such an alteration or limitation in the voting power of the common shares held by the appellant — when considered with the facts that she gave to the respondent formal written notice of her objection to the proposed amendment to the corporation's charter with a demand for payment for her stock, and thereafter caused her shares to be voted against that amendment at the annual meeting of October 30, 1945 — was sufficient to qualify her to invoke the statutory procedure upon which the present proceeding is based.

By paragraph (E) of section 36 of the Stock Corporation Law the respondent was given the right to alter the " privileges or voting powers of any shares previously authorized, or the restrictions or qualifications thereof  *  *  *." But that statutory right was burdened with conditions set forth in section 38, which section provides in part:

" § 38. PROVISIONS APPLICABLE TO ONE OR MORE PROCEEDINGS UNDER SECTIONS TWENTY-EIGHT AND THIRTY-SIX. The following provisions shall be applicable to a certificate under  *  *  * section thirty-six.  *  *  *

" 9. If the certificate  *  *  *

(d) abolishes any voting right of the holders of shares of any class or *limits their voting rights,* except as the same may be limited by the voting rights given to new shares of any class authorized by the certificate;

any holder of any such shares not in favor of such action may at any time prior to the vote authorizing such action  *  *  * object to such action and demand payment for his stock, and thereupon such stockholder or the corporation shall have the right, subject to the conditions and provisions of section twenty-one, to have such stock appraised and paid for as provided in said section. Such objection and demand must be in writing and filed with the corporation." (Emphasis supplied.)

When, in the present proceeding, Special Term concluded that, within the meaning of the statute last quoted above, the new voting privileges granted to respondent's preferred stockholders at the meeting of October 30, 1945, did not cause such a deprivation of an existing stockholder's rights as would justify granting the relief sought by this proceeding, the court cited our ruling in *Matter of Kinney* (279 N. Y. 423) as authority for its decision. In doing so we think Special Term failed to give proper weight to the decisive fact that the amendment to the certificate of incorporation which was objected to by the petitioner in the *Kinney* case (*supra*), involved a *new and previously unauthorized issue* of preferred stock, while in the case at bar the charter amendment, to which the appellant objects, granted new voting rights — equal to those of the common shares — to *previously authorized* preferred stock of which 165,600 shares were then issued and outstanding. The significance of that fact is emphasized by the following excerpt from the opinion per FINCH, J., at pages 430–431 — " * * * section 38 permits an appraisal only when an amended certificate alters the preferential rights of the *outstanding* stock of a corporation as between the different classes of stock * * * it does not apply to a case where such rights are left unchanged as between themselves, but are both made subject to a new issue of stock." (*Matter of Kinney, supra.*) (Emphasis supplied.)

In that connection it is significant that when — after our decision in the *Kinney* case (*supra*) — the Legislature, by chapter 600 of the Laws of 1943, amended subdivision 9 of section 38 by granting to a nonconsenting stockholder the right to an appraisal of his stock — " If the certificate * * * (d) abolishes any voting right of the holders of shares of any class or limits their voting rights * * * ", it added the following provision — " except as the same may be limited by the voting rights given to *new shares* of any class authorized by the certificate ". (Emphasis supplied.) (And see Stock Corporation Law, § 36, par. [E] and, § 38, subd. 11, as those sections were amended by L. 1943, ch. 600.)

In the case at bar, as we have seen, the appellant as the owner of respondent's common stock objects to corporate action which granted to previously authorized preferred stock the right to vote upon matters as to which the common stock, prior to

such action, had the exclusive right to vote. Our conclusion is that, by thus limiting the voting power of the appellant's common shares to a proportionate extent measured at a given time by the number of preferred shares then issued and outstanding, the corporate action to which the appellant has objected was of such a character as to afford her a legal basis to invoke the procedure prescribed by paragraph (d) of subdivision 9 of section 38, as a means to accomplish the appraisal of her stock and payment therefor.

With emphasis placed upon the fact that of the 1,656,000 shares of the respondent's common stock outstanding the appellant owns only 50 shares, we are told in support of the respondent's position that " The effect of the amendment upon appellant's stock (if any) was so trivial and insignificant that it may fairly be described as *de minimis.*" We are also told that if the appellant had a bona fide desire to sell her stock at market value she could have done so on October 30, 1945, for approximately three times the amount of her investment and at more than twenty points per share above its book value. These asserted facts form the basis for the respondent's argument that the appellant's application now before us should be denied because it was not made in good faith.

As to that argument it is enough to say that the Legislature has clearly prescribed the conditions under which a nonconsenting stockholder may have his stock evaluated and enforce payment therefor. We find in those conditions no legislative declaration of a minimum percentage or value of stock which must be owned by a nonconsenting stockholder to qualify him to invoke the prescribed statutory procedure. (Cf. General Corporation Law, § 61-b.)

In *Anderson* v. *International Minerals & Chemical Corp.* (295 N. Y. 343), we dealt with an analogous situation which arose as an incident to a corporate consolidation. There, as in the case at hand, we considered the Legislature's purpose in enacting those provisions of the Stock Corporation Law which, under prescribed conditions, grant to dissenting shareholders the right to have their stock holdings appraised and to enforce payment therefor. Referring to the legislative purpose Judge THACHER wrote for the court at page 350: " The remedy of appraisal and

payment was intended to afford fair and just compensation to the dissenters and at the same time provide the method by which their objections could be fairly composed so as to enable the consolidation to proceed.''

Where, as in this instance, the Legislature by precise language has created a right and with equal precision has set forth the procedure by which that right may be availed of, the courts may not limit or enlarge that right or alter that procedure. (*Matter of Cantor*, 261 N. Y. 6, 12; *Thompkins* v. *Hunter*, 149 N. Y. 117, 122-123.)

The orders should be reversed and the matter remitted to Special Term for further proceedings not inconsistent with this opinion, with costs in all courts to the appellant.

LOUGHRAN, Ch. J., CONWAY, DESMOND, THACHER, DYE and FULD, JJ., concur.

Orders reversed, etc.